## STATE v. POWERS*
(No. 1270; Oct. 27, 1925; 239 Pac. 1044)

Intoxicating Liquors—Evidence Sustaining Conviction.

1. Evidence *held* to sustain conviction for unlawfully manu-
facturing and possessing intoxicating liquor.

*See Headotes (1) 33 C. J. pp. 758, 764.

Appeal from District Court, Natrona County; Cyrus
O. Brown, Judge.

B. J. Powers and Carl Powers were convicted of unlaw-
fully manufacturing and possessing intoxicating liquors
and they appeal. The material facts are stated in the opin-
ion.

*M. F. Ryan* for appellant.

The evidence is insufficient to sustain the verdict, and is
contrary to law. There was no homestead where the still
was found, there being nothing but a fence around a sand
pile. Defendants lived together on the homestead of B. J.
Powers; there was evidence of tracks in the road and auto-
mobiles were seen driving around the neighborhood during
the night. No intoxicating liquor was produced at the trial
nor evidence of any being found, except 20 gallons found
out on the prairie; there was no proof that it was intoxicat-
ing liquor. The case falls within the rule stated in State
vs. Lewis, 223 P. 915, holding that a conviction in a crim-
inal case cannot be founded upon conjecture nor upon prob-
abilities however strong; there was a reasonable doubt as to
the existence of any of the essential elements of the crime
charged, and defendants should have been acquitted; State
vs. Pressler, 16 Wyo. 214; Graham vs. State, 152 Pac. 136;
Blake vs. State, 160 Pac. 30, L. R. A. 1917 B; State vs.
Lumpkin, 169 Pac. 939; Adair vs. State, 180 Pac. 253; State
vs. Grover (Ida.) 207 Pac. 1060; State vs. Frey, (Kans.)
208 Pac. 574; State vs. Sullivan (Ida.) 199 Pac. 647; there
was no evidence connecting defendant with the possession
or manufacturing of intoxicating liquor.

*David J. Howell,* Attorney General, and *John C. Pickett,* Asst. Atty General for respondent.

The officers found a still-house in a sand blowout constructed of fence posts covered with sand; this still-house contained a large still and 13 fifty gallon barrels of mash used in making moonshine whiskey. Defendant, B. J. Powers rode up to the still-house and got off his horse and then, observing one of the officers at a short distance, rode up to where the officer was, and the officer detained him until the other officer returned. Two homesteads belonging to defendants were connected by a well used road, which ended at the still-house; the tracks in the road were made by defendants' wagon. Defendant, B. J. Powers, rode away, but was recognized in an automobile near the still that night. Three sacks of sugar and a sack of corn was found in the homestead house of B. J. Powers. Defendant Carl R. Powers arrived at the homestead with a wagon that night containing a barrel of gasoline, a quantity of kerosene, some coal and an empty 50 gallon barrel. There were other circumstances and movements of the parties including the discovery of 20 gallons of whiskey near the homestead, which would mean nothing else except the guilt of defendants, which justified the jury in returning a verdict of guilt. Where there is any evidence to support a verdict, the court should not direct a verdict of acquittal; 16 C. J. 936; 26 R. C. L. 1067; Cornish vs. Ter. 3 Wyo. 95. Liquor and appliances for its manufacture found upon the premises of defendants is sufficient to justify a jury in finding that said articles were unlawfully possessed by defendants; Smith vs. Com. 116 S. E. 246 (Va.); Taylor vs. State, (Ga.) 62 S. E. 1049; Usry vs. State (Ga.) 117 S. E. 108; Wampler vs. Norton (Va.) 113 S. E. 733; Malcom vs. State (Ga.) 112 S. E. 651; George vs. Com. (Ky.) 250 S. W. 488; Ward vs. State (Ark.) 243 S. W. 857; Appling vs. State (Ark.) 114 S. W. 927; Edwards vs. State (Ala.) 95 So. 560; Reeves vs. State (Ala.) 95 So. 203; McBroom vs. State (Ala.) 94 So. 790; Lindsey vs. State (Ala.) 93 So. 331; violation of liquor

laws may be proven by circumstantial evidence, if consistent with guilt and inconsistent with innocence, and of a character to lead to but one fair and reasonable conclusion; Curran vs. State, 12 Wyo. 553; Gardner vs. State, 27 Wyo. 316; Malcolm vs. State, 112 S. E. 651; Butler vs. City, (Ga.) 75 S. E. 858; Cage vs. State (Ga.) 75 S. E. 160.

Tidball, District Judge.

Defendants and appellants were convicted in the trial court of violation of the liquor laws of the State and were duly sentenced therefor and have appealed to this court.

In their brief, defendants say: "In our argument we will discuss all assignments of error together as the specifications of error present but one question, viz: The evidence is insufficient to sustain the verdict and is contrary to law."

There is but one question, therefore, in this case:—Is the evidence sufficient to sustain the verdict? We think it is. It is true the evidence is more or less circumstantial, but strong. The defendants were convicted of unlawful possession and of unlawful manufacture of whiskey. A minute review of the evidence would serve no good purpose, as the identical facts are not likely to occur again in another case.

The defendants are brothers and lived on homesteads in Natrona County about two miles apart, located in what is described as the sand hills some twenty miles from Casper, on the lonely, wind-swept, dry and sandy desert. In the middle of the Carl Powers place was located the only improvement, save a fence, that had been erected on his homestead, said improvement consisting of a still house constructed of fence posts and covered over with mother earth, situated in a commodious sand blowout. The furniture in this house consisted of a still of large dimensions and thirteen fifty-gallon barrels of mash. Directly from this still house to the home of B. J. Powers, but leading nowhere else, there was a road which showed signs of much use by a narrow-tired wagon. On the B. J. Powers place was a small tar-paper covered house, a barn, shed and corral. On the fate-

ful day alleged in the information an under-sheriff of Na-
trona County, named W. C. Irving, and a Federal Prohibi-
tion agent, S. R. Owens, went to call upon the Powers broth-
ers at their respective homesteads. Before arriving at their
destination, Sheriff Irving had car trouble and returned for
repairs, but Owens proceeded on his journey and after visit-
ing the still house on the Carl Powers place, took up a lonely
vigil on a hill-top overlooking the still house in question.
After a long wait his vigilant effort was rewarded. B. J.
Powers rode up to the still house, dismounted, then, seeing
the lonely figure on the hill-top, remounted and rode up to
where Owens was situated, and, at the latter's urgent sug-
gestion B. J. remained until Irving's return. Irving then
invited Powers to go on ahead and wait by the gate at the
B. J. Powers homestead until the arrival of Irving and
Owens. B. J. proceeded as directed but failed to stop and
was seen no more until late that night. When the officers
arrived at the B. J. Powers home, the horse that B. J. was
riding was there in the corral but the rider was missing. In
the house were three sacks of sugar and a sack of corn.
Near the house, in another sand blowout, was a shed which,
the evidence indicates, had been used as a store-room for
barrels, and nearby was found a barrel with the bung re-
moved, but still containing some twenty gallons of moon-
shine whiskey.

About nine-thirty that evening, defendant C. R. Powers
arrived at the B. J. Powers homestead, driving a narrow-
tired wagon laden with a fifty-gallon barrel of gasoline,
twenty gallons of kerosene, some coal, and an empty fifty-
gallon barrel, and he was placed under arrest. Later, about
midnight, an automobile drove by, going south, and imme-
diately the two officers started in pursuit and followed for
about a mile. The pursued car then turned off its lights and
was lost to view. Later, two other cars appeared on the
scene and from twelve-fifteen to two-fifteen in the morning
the three cars were pursued by the officers over the track-
less prairies in a radius of about three miles. It was in the

morning after this chase that the fifty-gallon barrel containing about twenty gallons of whiskey was found on the prairie where the chasers and the chased had operated. During the chase, under sheriff Irving recognized B. J. Powers as one of the occupants of one of the automobiles that was pursuing its elusive way over the prairie unmindful of roads and barbed wire fences. At the time of his recognition, B. J. was down by the side of his car unwinding barbed wire from a wheel by the glare of a flashlight which he held in his hand. The next day, the B. J. Powers car was found in Casper in a badly scratched condition, the windshield broken, and with barbed wire wound around its wheels. There are other circumstances related in the testimony, but we believe this sufficient to show the nature of the State's evidence. The defendants offered no evidence.

We think the jury was justified in believing that the Powers boys were unlawfully manufacturing intoxicating liquor and were unlawfully possessing the same, and the judgment of the trial court is affirmed.

*Affirmed.*

POTTER, C. J., and BLUME, J., concur.
KIMBALL, J., did not sit.